IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRAD LEE BEAUDREAU,

    Plaintiff,
v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

OPINION and ORDER

18-cv-725-jdp

---

Plaintiff Brad Lee Beaudreau seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of the Social Security Administration, finding Beaudreau not disabled within the meaning of the Social Security Act. Beaudreau contends that the administrative law judge erred in three ways: (1) giving too much weight to statements of an examining physician who questioned Beaudreau's credibility; (2) failing to give enough weight to other opinions in the record; and (3) failing to account for any mental impairments in the residual functional capacity assessment. The court rejects each contention and will affirm the commissioner's decision and cancel the oral argument scheduled for May 30, 2019.[1]

---

[1] Beaudreau did not file a reply brief, which raises the question whether he is conceding the points the commissioner raised in her opposition brief. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The court has assumed for the purpose of this decision that Beaudreau believes that his opening brief adequately anticipated the commissioner's arguments. If counsel declines to file a reply brief in the future, he should file a letter with the court explaining why.

ANALYSIS

The ALJ found that Beaudreau suffered from several severe physical impairments, including obesity, degenerative joint disease, neuropathy, and diabetes. He also considered potential impairments related to "four broad areas of mental functioning": (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and managing oneself. R. 17–18.[2] But the ALJ concluded that Beaudreau didn't suffer from "more than minimal limitation in [his] ability to perform basic mental work activities," so any mental impairments he had were "nonsevere." R. 17. And, despite Beaudreau's physical limitations, the ALJ found that Beaudreau was not disabled because he retained the ability to perform his past work as a security guard.

Beaudreau doesn't challenge any of the ALJ's findings about Beaudreau's physical impairments, so the court will not consider those. Instead, Beaudreau says that the ALJ made three errors in the way he handled evidence about his mental impairments caused by a 1996 head injury.[3] The court will consider each alleged error in turn.

**A. Reliance on David McKee's opinion**

McKee is a neurologist who examined Beaudreau in July 2015 but found no evidence of impairment. R. 461–62. Beaudreau says that "nearly all of ALJ [David] Washington's decision revolved around" McKee's determination that Beaudreau was exaggerating his

---

[2] Record cites are to the administrative transcript, located at Dkt. 7.

[3] In his brief, Beaudreau refers to this as a "traumatic brain injury," Dkt. 10, at 2, but he doesn't cite any evidence to support that allegation. The ALJ cited a record stating that Beaudreau suffered "multiple skull fractures" as a result of falling down the stairs, R. 461, but neither the ALJ nor the parties cited evidence of any enduring brain injury.

symptoms and that the ALJ's reliance on McKee's assessment was improper because the assessment was not supported by the evidence. Beaudreau is wrong on both counts.

It is true that McKee expressed skepticism about the severity of Beaudreau's symptoms. In his summary of his examination of Beaudreau, McKee made the following observations:

- Beaudreau "quickly made it clear that his reason for coming today is that he was recently denied disability status before a judge in Wisconsin. He related that his lawyer told him that his best chance of getting disability would be to see lots of doctors and get lots of records supporting his claim to have cognitive trouble." R. 461.

- "Since [his injury] he has worked off and on, but he [seems] to spend much of his time trying to get on disability." *Id.*

- "He says he is not able to hold down a job, but it is unclear why." *Id.*

- "I suspect that there is evidence in his records that there is no residual cerebral dysfunction. Otherwise, he probably would have brought those supporting records along with him." *Id.*

- "I did have the feeling that during the first portion of the interview he was feigning more difficulty than he actually has." R. 461–62.

It is also true that the ALJ relied in part on McKee's assessment of Beaudreau. In concluding that Beaudreau didn't suffer from a severe mental impairment, the ALJ cited McKee's opinion multiple times. R. 17.

But it is simply not accurate that the ALJ rested his decision primarily on McKee. The ALJ also relied on the following reasons to support his finding that Beaudreau had no more than minimal mental health limitations:

- Beaudreau repeatedly failed to follow up with doctor recommendations for further treatment and testing for his alleged mental limitations. R. 17.

- Examining psychologist Travis Hinze found that Beaudreau had adequate judgment and orientation, was able to count to 20 forward and backward, spell "world" forward and backward, and count backward from 100 to 70 in

3

three-number increments; Hinze concluded that Beaudreau's "general fund of information appeared to be within the low end of the normal range." R.18, 555.

- Beaudreau alleged that he had difficulty getting along with others, but none of his treatment providers reported this. R. 18.

- Beaudreau alleged that he had difficulty with concentration, persistence, and pace, but there was no objective evidence to support that allegation. *Id*.

- Although Beaudreau had received regular medical examinations and appointments, he had not received any mental health treatment since his onset date. *Id*.

- Beaudreau lived alone and was able to care for himself. *Id*.

Beaudreau doesn't challenge any of these other reasons.

In any event, it was not error for the ALJ to rely on McKee's opinion. Although Beaudreau frames this argument as a challenge to McKee's medical opinions, he doesn't actually challenge McKee's conclusion that his examination did not show any mental impairments. Rather, Beaudreau is really challenging the ALJ's decision to rely on McKee in assessing Beaudreau's credibility. An ALJ's credibility determination is entitled to deference, and a court may overturn a credibility finding only if it is "patently wrong." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Beaudreau says that McKee's first statement shows that McKee was "penaliz[ing] [Beaudreau] for advising doctors that he is receiving medical treatment to support the record for his social security disability application," Dkt. 10, at 2, citing *Moss v. Astrue*, 555 F.3d 556, 560–61 (7th Cir. 2009). But *Moss* isn't instructive. In that case, the ALJ erred by discounting the opinion of a treating physician "based on speculation that [the plaintiff] was referred to him by her attorney and that his findings may have been made to help the claimant in a pending legal matter since the doctor was reporting directly to her attorney." *Id.* at 560 (internal quotations omitted). That's not what happened in this case. Rather, McKee reported

4

that Beaudreau's "reason for coming today is that he was recently denied disability status before a judge in Wisconsin" and that Beaudreau's "lawyer told him that his best chance of getting disability would be to see lots of doctors and get lots of records supporting his claim to have cognitive trouble." R. 461.

Beaudreau's statements to McKee are ambiguous. One interpretation of those statements is that Beaudreau was simply acknowledging reality: a claim has a better chance of prevailing if it is well supported. But it would also be reasonable to interpret Beadreau's statements as an admission that he was seeking treatment simply to help him obtain benefits rather than because he actually needed treatment. Beaudreau points to no authority requiring either McKee or the ALJ to give him the benefit of the doubt. Rather, when "the record supports more than one reasonable conclusion, a reviewing court must defer to the administrative law judge's reasoned consideration of the evidence." *Devries v. Astrue*, No. 09-cv-636-bbc, 2010 WL 1643234, *11 (W.D. Wis. Apr. 22, 2010).

As for McKee's statement that Beaudreau would have provided any documentation he had to show that he had continuing dysfunction, Beaudreau calls the statement "pure speculation." Dkt. 10, at 3. Even now, Beaudreau doesn't point to any medical records to support an allegation that his 1996 head injury continues to have an effect on his mental abilities. So, regardless whether it was reasonable for McKee to assume that Beaudreau didn't have medical records to support his allegation, it was reasonable for the ALJ to consider whether Beaudreau has objective evidence to support his claim. *Lambert v. Berryhill,* 896 F.3d 768, 778 (7th Cir. 2018) ("[A] lack of objective support from physical examinations and test results is relevant.").

As for McKee's statement that Beaudreau was "feigning more difficulty" during the beginning of the examination, Beaudreau says that it is likely that McKee had that perception because, as McKee observed, Beaudreau initially was "speaking in short phrases" and "forgetting questions that [McKee] had asked him," but later in the exam Beaudreau had "fairly coherent" answers. R. 461. Beaudreau says that McKee's observations do not undermine his credibility because they are "consistent with" statements that he made at the administrative hearing. Dkt. 10, at 3–4. Beaudreau cites page 46 of the transcript, but that is the examination of the vocational expert. The court's own review of the transcript did not uncover support for this argument. On page 42, Beaudreau said that he's "usually pretty good" with conversations, "but certain questions they'll ask and I can't hear it very well, so you got to kind of repeat yourself." That is not consistent with McKee's report. In any event, the court does not conduct a de novo review of the ALJ's credibility determination. The court cannot say that it was "patently wrong" for the ALJ to consider an examining physician's statement that Beaudreau was exaggerating his symptoms. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (physician's perception that patient may have feigned symptoms is relevant to ALJ's credibility determination); *Simila v. Astrue*, 573 F.3d 503, 518–19 (7th Cir. 2009) (same).

**B. Handling of other opinions in the record**

In addition to McKee's opinion, the ALJ considered opinions related to possible mental impairments from the following sources:

- Jack Spear, a consulting psychologist who conducted a record review in 2015;
- Therese Harris, a consulting psychologist who examined Beaudreau in 2016;
- Kevin McClelland, a physician who treated Beaudreau in 2015;
- Travis Hinze, a psychologist who examined Beaudreau in 2016;

6

- Martha Oi, an "advocate" who prepared a "function report" in 2016;

- staff from State of Wisconsin, Department of Workforce Development, Division of Vocational Rehabilitation, who assisted Beaudreau in 2015;

- Beaudreau's mother;

- one of Beaudreau's friends.

Beaudreau doesn't challenge the ALJ's handling of the opinions of Spear, Harris, McClelland, Beaudreau's mother, or Beaudreau's friend, so the court need not discuss those. (Spear and Harris found no mental health limitations; McClelland did.) But Beaudreau says that the ALJ erred by rejecting the other three opinions simply because they were inconsistent with McKee's opinion. Again, this mischaracterizes the ALJ's decision.

It is true that the ALJ did not credit the portions of the three opinions that favored Beaudreau. It is also true that the ALJ observed that that Hinze, Oi, and the department did not indicate that they had reviewed McKee's opinion that Beaudreau may be feigning his symptoms. R. 19, 24. The court agrees with Beaudreau that the failure of Hinze, Oi, and the department to review McKee's opinion does not itself discredit those three opinions. After all, McKee did not refer to any other opinions either. So if that were the only reason that the ALJ had rejected the other opinions, the court would remand the case. But that is not what the ALJ did.

Hinze concluded that Beaudreau has moderate impairment in the areas of understanding, remembering, and carrying out simple instructions, responding appropriately to superiors and coworkers, maintaining concentration, attention, and work pace, and withstanding routine work stressors. R. 19. In rejecting these conclusions, the ALJ stated that Hinze "relied quite heavily" on Beaudreau's subjective complaints and that there were multiple

reasons for questioning Beaudreau's credibility. *Id.* Specifically, the ALJ noted that Beaudreau had continued to work after his head injury and that he had not sought mental health treatment since his onset date, even though he sought various other forms of medical treatment. *Id.* Beaudreau doesn't challenge the validity of these other reasons, so Beaudreau has failed to show that the ALJ erred in rejecting Hinze's opinion. *See Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016) ("[T]he ALJ properly discounted Dr. Cusack's medical opinion that rests entirely on the claimant's subjective complaints."); *Mitze v. Colvin,* 782 F.3d 879, 881–82 (7th Cir. 2015) (claimant's decision to "turn[] down other treatment options [is] another reason to think she may have been exaggerating her symptoms"); *Castile v. Astrue*, 617 F.3d 923, 927–28 (7th Cir. 2010) (ALJ may consider claimant's continued employment after injury).

Oi and the department both stated that Beaudreau exhibited confusion. R. 395, 404. The ALJ rejected these opinions for the same reasons that he rejected Hinze's opinion. R. 24. He also noted that neither Oi nor department staff showed that they were qualified to make mental health assessments. Again, Beaudreau doesn't challenge any of these reasons, so the court concludes that he has failed to show that the ALJ failed to give due weight to these opinions.

## C. Residual functional capacity assessment

Beaudreau says that the ALJ erred in failing to include any restrictions related to mental impairments in his residual functional capacity assessment. As discussed above, the ALJ concluded that none of Beaudreau's mental impairments cause more than minimal limitations. Beaudreau is correct that the ALJ must consider the effects of nonsevere impairments, *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008), but the ALJ did that. An ALJ doesn't have to include restrictions for nonsevere impairments in the residual functional capacity assessment unless

the evidence calls for it. Because Beaudreau doesn't identify any additional restrictions that are supported by the evidence, this argument fails as well. *See Loveless*, 810 F.3d at 508 (plaintiff not entitled to remand if he "does not identify medical evidence that would justify further restrictions").

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the May 30, 2019 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered May 20, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge